Sandra K. Rolfe, #1305009
CSG, Inc.
714 Fourth Avenue, Suite 200
Fairbanks, AK 99701
(907) 452-1855
(907) 452-8154 fax
sandra@alaskalaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS

ROBERT SAXTON,                          )
                                        )
            Plaintiff,                  )
                                        )   **JURY DEMANDED**
v.                                      )
                                        )
ALYESKA PIPELINE SERVICE                )
COMPANY,                                )
                                        )
            Defendant.                  )
_____)

Case No. 4:26-cv-00026

## COMPLAINT AND JURY DEMAND

Plaintiff Robert Saxton ("Saxton" or "Plaintiff"), by and through his undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Robert Saxton ("Saxton") ("Plaintiff") brings this action against Alyeska Pipeline Service Company ("APSC"), a corporation, to redress unlawful retaliation and retaliatory hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., ("Title VII").

2. Saxton opposed sexual harassment in his workplace and participated in the employer's investigation of sexual harassment in his workplace. As a result, APSC unlawfully and continually retaliated against him, including: targeting him for abuse, manufacturing disciplinary actions against him, subjecting him to a punishing and unfair

work schedule, and ultimately causing his termination under the pretext of a reduction in force.

3.    But for Saxton's protected activity, he would not have been targeted for unlawful retaliation and subsequently terminated by the defendant.

4.    These severe and/or pervasive acts and omissions occurred on an ongoing and continuous basis between approximately November 1, 2022 through December 5, 2025, inclusive.

5.    Plaintiff seeks declaratory and injunctive relief; back pay; front pay, compensatory, nominal, and punitive damages; and attorneys' fees, interests, costs, and expenses to address APSC's unlawful conduct.

## PARTIES

6.    Plaintiff Robert Saxton is a resident of Soldotna, Alaska. He was employed by defendant APSC from September 6, 2021 until December 5, 2025, working in Alaska.

7.    Defendant APSC is a corporate entity that maintains its principal place of business at 3700 Centerpoint Drive, Anchorage, Alaska 99503.

## JURISDICTION AND VENUE

8.    Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. §1331. This is an action authorized and commenced pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

9.    Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), and 42 U.S.C. § 2000e-5(f)(3) because defendant APSC is subject to personal jurisdiction in Alaska.

10.    The District of Alaska is the most logical forum to litigate the claims of Plaintiff because APSC's principal office is located in Anchorage, Alaska and it conducts

**CSG, INC.**
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

business throughout the state.

## **ADMINISTRATIVE REMEDIES EXHAUSTED**

11. On or about January 27, 2026, Plaintiff, through his undersigned counsel, submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 551-2026-02486.

12. On February 3, 2026, the EEOC issued Plaintiff a Notice of Right to Sue, directing him to file a lawsuit within 90 days of Plaintiff's receipt of the Notice.

13. This Complaint is timely filed within the 90 days of Plaintiff's receipt of the Notice.

14. Plaintiff's allegations within this Complaint are within the scope of the Charge previously filed with the EEOC.

## **FACTS COMMON TO ALL COUNTS**

### A. Saxton's Employment at APSC

15. Saxton possesses two associate degrees from the University of Alaska, Kenai Peninsula College: a degree in Industrial Instrumentation and a degree in Process Technology.

16. Before joining APSC, Saxton worked in industrial instrumentation and controls, from 2009 to 2020. Saxton developed substantial expertise in his trade.

17. APSC hired Saxton on September 6, 2021 as an Instrument Technician Trainee at the Valdez Marine Terminal ("VMT").

18. Saxton quickly became aware some APSC employees resented him for not being a Valdez resident/local.

19. Saxton worked a two-week-on, two-week-off schedule, splitting his time between Valdez and his home in Soldotna, approximately 490 miles away.

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

20. Saxton advanced rapidly at APSC. He was promoted to Instrument Technician Level 2 in early 2022 and was promoted to Level 4 by summer 2022.

21. Throughout the relevant period, Saxton's direct supervisor was Jeff Woods, ("Woods") Instrumentation and Electrical Maintenance Supervisor.

## B. Harassment at APSC

22. Starting about November 2022, a male coworker Torin Smith ("Smith"), employed by APSC, began sexually harassing Saxton, and others, in the workplace.

23. Smith regularly grabbed, struck, or attempted to grab and strike, Saxton and other APSC employees in the genitals during work hours. Smith referred to this offensive conduct as "sack tapping."

24. Saxton repeatedly told Smith to stop and that the conduct was offensive. Smith did not cease these sexual attacks against Saxton and others.

25. In about November 2022, Smith brought a life-sized printed cardboard cutout of another employee into the workplace. The cutout was covered in obscenities, and Smith openly displayed it in the workplace. Saxton opposed its display in the workplace.

26. Woods was present on multiple occasions when Smith struck or grabbed other APSC employees in the genitals. Woods did not intervene. Woods also saw the life-sized, defaced cutout of the employee and did not order its removal.

27. Woods and Smith were close friends.

28. Smith's offensive conduct was uncivilized, unwelcome and severe.

29. Saxton opposed Smith's offensive conduct by directly telling him to stop, by defending others subjected to the abuse, and asking that the defaced cutout be removed.

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

### C. Saxton's Participation in the Workplace Investigation

30. During or about November 2022, one of Saxton's female coworkers filed an anonymous complaint with APSC's Employee Concerns Program ("ECP") about ongoing sexual harassment in the workplace.

31. The ECP conducted an investigation that included interviews of employees in Saxton's unit.

32. Saxton participated in the ECP investigation as a witness.

33. Saxton noted that Woods reacted to the ECP complaint with visible agitation. Woods disclosed the identity of the supposedly anonymous complainant to other employees. This action undermined the confidentiality of the investigation.

34. Following the ECP investigation, Smith was absent from VMT until about April 2023. Woods also was absent from VMT until approximately April 2023.

### D. Woods Begins Sustained and Pervasive Retaliation

35. When Woods returned to VMT in approximately April 2023, his demeanor toward Saxton changed in remarkable and noteworthy ways.

36. Coworkers told Saxton that Woods referred to Saxton as a "snitch" and made other disparaging remarks about him in the work setting.

37. In February 2023, Saxton met with an APSC corporate officer at a town hall meeting. Through spring and early summer 2023, at this corporate officer's invitation, Saxton provided details and briefings concerning employee retention, hiring, and salary issues to this corporate officer.

38. In about June 2023, Saxton informed Woods about his meetings with the corporate officer. Woods responded by screaming at Saxton and telling him that he would "kick him off terminal."

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

Complaint and Jury Demand
Saxton v. Alyeska

39.   Woods engaged in a continuous course of retaliatory abuse against Saxton. Throughout the period beginning about June 2023 through early 2024, incidents included, but were not limited to:

   a. Singling out Saxton for minor matters, such as having his phone out during a meeting, when other technicians and APSC employees did the same;
   b. Attempting to prevent Saxton from cooking during allotted lunch breaks, a practice other employees engaged in without restriction;
   c. Blaming Saxton for Woods' own communication and scheduling failures;
   d. Attempting to deny Saxton mileage reimbursement for work-required travel, when similar technicians were reimbursed;
   e. Attempting to block Saxton's advancement to Level 5 and Level 6 technician;
   f. Trying to prevent Saxton from placing his RV outside of VMT (and not on APSC property), despite Saxton having permission;
   g. Issuing warnings to Saxton for badging in and out during work hours, which Saxton had permission to do;
   h. Instructing Saxton to leave the terminal and then attempting to trap Saxton in disciplinary action for not being at terminal.
   i. Woods did not treat other, comparable technicians in these ways.

40.   In late 2023, APSC distributed an anonymous survey to Saxton's team.

41.   In the survey, Saxton anonymously reported the harassment he had witnessed, opposed, and suffered at the hands of Woods.

42.   Woods' superior, then redacted the respondents' names to the surveys, and made the text of the survey responses public. Because Saxton's response contained detailed personal information, Woods was able to identify Saxton as the author.

43.   Woods was good friends with his superior.

44.   Due to Woods and his superior's friendship, this disclosure was more likely than not intentionally done to allow further targeting of Saxton. It was part of the pervasive retaliation.

45.   In early 2024, Saxton applied for a position at Pump Station 1 to escape

CSG, Inc.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

Woods. APSC denied Saxton's application.

46.     Woods harbored retaliatory animus because of Saxton's protected activity. Woods' animus manifested in documented statements (including threatening to kick Saxton "off terminal" and calling Saxton a "snitch") for daring to oppose disgusting behavior in his workplace.

47.     Woods' retaliatory animus was present in his day-to-day mistreatment against Saxton and the numerous abuses Saxton documented.

48.     Woods' unlawful retaliation was ongoing and continuous, and resulted from Plaintiff's complaints about sexual harassment and other misbehavior.

## E. Saxton's Formal Complaints to APSC Human Resources and ECP

49.     In March 2024, Saxton contacted and communicated with ECP about Woods' continuing retaliation.

50.     In April 2024, Saxton submitted a formal written complaint to ECP stating, in part, that he was "extremely concerned about further retaliation and harassment tactics."

51.     In addition to ECP, Saxton also communicated with a senior member of Human Resources ("HR") and provided them extensive documentation of Woods' misconduct Saxton had to endure.

52.     APSC took no meaningful action in response to Saxton's complaints.

## F. The First Disciplinary Review Board (November 2024)

53.      On or about November 27, 2024, APSC informed Saxton that he would be subject to a Disciplinary Review Board ("DRB").

54.     This first DRB charged Saxton with, among other things, allegedly misrepresenting the circumstances surrounding his partner's mother's (for all purposes

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

his "mother-in-law") tragic and untimely death in 2022. Notably, this event occurred more than two years before the first DRB charge and involved obtaining leave to respond to the traumatic death of his family member.

55. The DRB punished Saxton for stating he was working on a "special assignment" for the Corporate Officer. Woods had previously screamed at Saxton when he learned about the conversations/meetings Saxton was having with the Corporate Officer.

56. The DRB also charged Saxton with misrepresenting claims he had brought to the ECP and HR about Woods' misconduct and retaliation. It is nothing less than shocking that Saxton's requests for help were weaponized against him.

57. The first DRB panel was initially composed of Woods himself, Woods' superior, and another APSC manager; the initial panel deciding Saxton's case included not only the very supervisor whose retaliatory misconduct Saxton sought escape, but also this man's good friend.

58. Upon Saxton's challenge, Woods was removed from the panel. His initial inclusion nonetheless shows that the disciplinary process was not insulated from Woods' influence.

59. The first DRB demoted Saxton from Level 6 to Level 5 Technician for twelve months with a corresponding reduction in pay. On internal appeal, the demotion was reduced to six months.

60. This first DRB against Saxton was caused by Woods' retaliatory animus. More likely than not, the panel relied upon information supplied by Woods (Saxton's direct supervisor), and there is no evidence APSC conducted a meaningful independent investigation to break the causal chain.

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

61. The first DRB was part of the pervasive unlawful retaliation against Saxton.

## G. The Second Disciplinary Review Board (March 2025)

62. On March 25, 2025, APSC initiated a second DRB against Saxton, charging him with purported time reporting deficiencies, procurement and process violations, and failure to follow directives.

63. These charges were baseless and part of the pervasive unlawful retaliation.

64. The information underpinning the second DRB was more likely than not also developed, collected, and submitted by Woods, as Saxton's direct supervisor.

65. As a partial result of the second DRB, APSC notified Saxton he would not be considered for reinstatement to a Level 6 technician until his management deemed appropriate.

66. The second DRB against Saxton was caused by Woods' retaliatory animus. APSC conducted no meaningful independent investigation sufficient to break the causal chain.

67. At this same time, Saxton documented in his 2024 Annual Performance that he was being subjected to unlawful retaliation. Saxton received no meaningful resolution from APSC.

## H. Punitive Schedule Change (April 2025)

68. In approximately April 2025, over Saxton's objection, APSC shifted Saxton from a two-week-on, two-week-off schedule to a punishing one-week-on, one-week-off schedule.

69. The schedule change required Saxton to commute the 490 miles between his home in Soldotna and VMT every week, rather than every other week, imposing

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

substantial personal and financial burden on him.

70. Similarly situated technicians who had not engaged in protected activity were not subjected to comparable schedule changes. In short, it was another way to punish Saxton.

### I. Pretextual Termination Through Reduction in Force

71. On October 1, 2025, APSC notified Saxton that he would be subject to a purported reduction-in-force ("RIF").

72. APSC's stated RIF selection criteria, at its own admission, included a reduction for documented discipline. The documented discipline in Saxton's record consisted of the 2024 and 2025 DRBs, (and other disciplines) that factual records for which likely were developed by or with the direction of Woods in furtherance of the retaliation.

73. But for the retaliatory influence by Woods, Saxton would not have been subjected to the punitive DRBs, other discipline, and therefore would not have been selected for RIF.

74. On December 5, 2025 APSC terminated Saxton's employment.

75. The purported RIF was furthermore a pretext to remove Saxton. Saxton was selected for his separation for his protected activity, including his participation in the 2022 ECP investigation, his late 2023 survey report, his written complaints in March and April 2024, his communications with ECP and HR, and his continuing opposition to Woods' retaliatory misconduct.

76. But for Saxton's protected activity, the adverse actions described above would not have occurred.

**CSG, INC.**
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

## COUNT I

### Retaliation in Violation of Title VII ((42 U.S.C. § 2000e-3(a))

77.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

78.   Saxton engaged in protected activity within the meaning of Title VII, including both opposing sexual harassment in the workplace, and participating in and assisting in the workplace investigations. His protected activity included:

   a. opposing sexual harassment by directly telling the perpetrator to stop and by defending other employees subjected to the same conduct;
   b. participating as a witness in the ECP investigation initiated in or about November 2022;
   c. using APSC's late-2023 anonymous survey to report the sexual harassment he had witnessed and opposed;
   d. contacting and submitting a written complaint to the ECP expressing concern about "further retaliation and harassment tactics";
   e. providing extensive documentation of Woods's conduct to APSC HR.

79.   APSC knew of each of these protected activities.

80.   APSC subjected Saxton to materially adverse employment actions, including, without limitation: the first DRB and resulting demotion in November 2024; the second DRB in March 2025; the punishing schedule change in April 2025; and Saxton's unlawful termination on December 5, 2025.

81.   Each adverse action was causally connected to Saxton's protected activity. Woods knew of and resented Saxton's protected activity. More likely than not, Woods aided in developing, or developed, the factual record for the first and/or second DRB. The decisionmakers relied on this record and were contaminated by Woods' animus. APSC used Saxton's disciplinary record to select him for termination. Therefore, Woods' retaliatory animus was a proximate cause of each adverse action.

82.   APSC's proffered reasons for the adverse employment actions are

Complaint and Jury Demand
Saxton v. Alyeska
Page 11 of 15

**CSG, INC.**
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

pretextual.

83.     These adverse actions were ongoing and continuous.

84.     These adverse actions were severe and/or pervasive.

85.     But for Saxton's protected activity, none of the adverse employment actions stated above would have occurred.

86.     As a proximate result of APSC's unlawful retaliation in violation of Title VII, Saxton has suffered and continues to suffer monetary and/or economic damages, including but not limited to lost past and future income, benefits, and bonus compensation, for which he is entitled to an award of monetary damages and other relief.

87.     As a proximate result of APSC's unlawful retaliation in violation of Title VII, Saxton has suffered and continues to suffer non-economic damages, including severe mental anguish and extreme emotional distress, loss of enjoyment, self-esteem and self-confidence, injury to reputation, and other losses for which he is entitled to an award of monetary damages and other relief.

## COUNT II

### Retaliatory Hostile Work Environment in Violation of Title VII
### (42 U.S.C §§ 2000e-2 and 2000e-3)

88.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

89.     Following Saxton's opposition to and participation in the 2022 ECP investigation of sexual harassment, Woods subjected Saxton to severe and/or pervasive harassment over a continuous period from approximately April 2023 through the unlawful December 5, 2025 termination.

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

Complaint and Jury Demand
Saxton v. Alyeska
Page 12 of 15

90. Woods' retaliation was ongoing and continuous between approximately April 2023 and December 5, 2025.

91. Woods' harassing conduct included, among other things: labeling and calling Saxton a "snitch" in the workplace, threatening and screaming at Saxton, repeatedly reprimanding and demeaning Saxton for trivial matters; attempting to block Saxton's advancement, attempting to deny Saxton standard work benefits afforded to other employees; and likely aiding or developing the factual records that drove the pretextual disciplinary proceedings against Saxton.

92. Woods' misconduct was motivated by Saxtons' protected activity. Woods did not target similarly situated employees to Saxton.

93. Any reasonable person in Saxton's position would have found the environment hostile and abusive, and Saxton subjectively perceived the work environment as hostile and abusive.

94. As Woods was Saxton's direct supervisor, APSC is vicariously liable for Woods' misconduct. Saxton repeatedly sought help from APSC's internal complaint procedures. APSC did not only fail to take remedial action but there is evidence his complaints were weaponized against him in the first DRB.

95. As a proximate result of APSC's unlawful conduct and/or failures to redress the unlawful retaliation, Saxton has suffered monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

96. As a proximate result of APSC's unlawful conduct and/or failures to redress the unlawful retaliation, Saxton has suffered severe mental anguish and extreme emotional distress, loss of enjoyment of self-esteem and self-confidence, injury

CSG, INC.
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

to reputation, and other losses for which he is entitled to an award of monetary damages and other relief.

97.    APSC's conduct was willful, malicious, and undertaken with reckless indifference to Saxton's federally protected rights, entitling him to punitive damages.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Robert Saxton respectfully requests entry of judgment against the defendant, as follows:

A.    Declare that APSC violated Title VII of the Civil Rights Act of 1964.

B.    Enjoin APSC from engaging in further unlawful retaliation and harassment.

C.    Order APSC to make Plaintiff whole by providing appropriate back pay, front pay, lost benefits, and prejudgment interest, in amounts to be determined at trial, and other affirmative relief as the Court finds fair, adequate, and necessary.

D.    Order APSC to make Plaintiff whole by providing compensation for past, present, and future pecuniary losses resulting from the unlawful retaliatory practices described above in amounts to be determined at trial.

E.    Order APSC to make Plaintiff whole by providing compensation for non-pecuniary losses resulting from the unlawful discriminatory and retaliatory practices described above, including emotional pain and suffering, stress, inconvenience, embarrassment, loss of reputation, and humiliation, in amounts to be determined at trial.

F.    Order APSC to pay Plaintiff punitive damages for its willful and malicious conduct in wanton disregard of Plaintiff's rights as described above, in an amount to be determined at trial.

G.    Award reasonable attorney's fees, interest, and costs to plaintiff.

H.    Grant such other and further relief as the Court deems necessary and

**CSG, INC.**
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154

proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims of relief and issues triable by jury.

DATED this 30th day of April 2026.

Respectfully submitted,

/s/ *Sandra K. Rolfe*

Sandra K. Rolfe
714 Fourth Avenue, Suite 200
Fairbanks, Ak 99701
Phone: (907) 452-1855
Fax: (907) 452-8154
Email: sandra@alaskalaw.com
Alaska Bar No. 1305009

OF COUNSEL:
Calvin J. Riorda
7903 Roldrew Avenue
Towson, Maryland 21204
Tel. (443) 847-1040
Email: Calvin.Riorda@protonmail.com
Maryland Bar No. 2012180039
(*Pro hac vice* admission pending)

**CSG, INC.**
ATTORNEYS AT LAW
714 FOURTH AVENUE, SUITE 200
FAIRBANKS, ALASKA 99701
PHONE: (907) 452-1855
FAX: (907) 452-8154